I move to the final case this morning, Geometry Milton v. Boughton. May it please the Court. Kenton Skurin on behalf of Petitioner Appellant Geometry Milton. As the case has been briefed, I want to focus on two points before the Court today. The first point is that the State, not my client, bears the burden for proving waiver on the ineffective assistance claim in this case. The second point is the prejudice point that when the State puts on not one, but two witnesses, and the key two witnesses to put Mr. Milton at the scene of the crime and participating in the altercation that led to the shooting in this case, that that is inherently prejudicial when those witnesses testify to an uncounseled, unconstitutional lineup in this case. So if I can go first to the waiver point, the place that this Court should go for assessing waiver is pages 52 to 57 of our opening brief. What our cases show there is there are a series of habeas cases that we cite that clearly demonstrate that the rule of Harley v. Cochran that waiver of the Sixth Amendment right to counsel is the State's burden does not change just because you are now on a habeas case and does not change just because we are in the Strickland ineffective assistance of counsel context. And there are the cases that I would particularly point the Court to are the Day-Bullion case, the Smith case, the Whithead case, and then also the Court should take a look at a case that we didn't cite, Wondick v. Trans, 869 Fed 2nd at page 1087. If you look at those cases, what they all demonstrate is that waiver is not the petitioner's burden, waiver is the State's burden. The reason for that is that what you have in this case is you have a prima facie case where there is no dispute as the case comes to this Court that a constitutional violation occurred as to not one but two witnesses. The elements under the Gilbert standard for the standard for whether a lineup is properly introduced are if a lineup occurs after indictment, if there is the petitioner is entitled to counsel, and if that does not occur, that is just a per se constitutional violation. Mr. Scorian, let's assume we agree with you on that. I'd like to hear you address prong two, Strickland prong two, the prejudice aspect of it in particular. And I want you to focus on James Mayfield's testimony. All right. And what's your best argument that his testimony, when combined with the other evidence in the case, the physical evidence, albeit limited as it was, and the other testimony, was insufficient to convict Mr. Milton? So the standard, I would start with the standard, which is a reasonable probability of prejudice. You've got the habeas overlay on top of that. Correct. Right? Correct. So set the standard aside because I want to hear you focus on the evidence and your view of James Mayfield's testimony in particular. Yes, Judge Scudder. So James Mayfield testified to a few things. He testified to a photo lineup. He testified to a lineup at which counsel was not present, the unconstitutional lineup. And then he identified in court my client, Mr. Milton. The uncounseled lineup is per se inadmissible. Then what the court should have done but did not, because of the ineffective assistance of counsel, is the court should have conducted the United States v. Wade analysis on the in-court identification. When you go to the in-court identification, probably the most important element that should have held that that testimony, that identification in court was inadmissible, is the fact that Mr. Mayfield himself told police not once but twice, and his mother corroborated it, that he wasn't even in a position to see the shooting, much less the altercation that preceded the shooting, because he was inside sleeping at the time. And when you take that testimony, you also combine that with the fact that in the hours immediately following the shooting, Mr. Mayfield identified not one but two different potential suspects, first Ken Ken and then Dan Dan. He switches his testimony, or he switches his statements to police rather. And then when you combine that with the fact that he's a twice convicted by the age of 18 witness, and you combine that with the fact that he admits at trial that he and Mr. Howard, his mother's boyfriend, as well as his mother, were all talking before the police lineup, and you put all of those pieces together, the argument is that his counsel was ineffective and prejudicial in failing to attack that lineup, or I'm sorry, that in-court identification as tainted by the uncounseled lineup. So you take those pieces and then you have... But don't you have to balance against that, the fact that Mr. Mayfield identified your client in a photo lineup before seeing the live lineup? So that testimony was not tainted. That is correct. That photo identification did occur before the unconstitutional lineup. And isn't that directly relevant to the weight analysis as well? That would be another factor that would be considered in the weight analysis. You're correct, Judge St. Eve. However, when you look at, as you say, the totality of the evidence, which is what you are supposed to weigh in assessing the weight analysis for the taint, you also have to take into account the fact that Mr. Mayfield frankly admitted that he was not in a position to see what occurred. Did his testimony change on that point, though? I'm sorry? Did his testimony change on that point? So at best, his testimony is mixed on that point. By the time that he gets to trial, he is claiming that he saw the altercation ahead of the shooting. So that is correct, Your Honor. What we need to do, I think, if we look at on the prejudice analysis, if you look at a case like the Tomlin v. Myers case from the Ninth Circuit, it's a Kaczynski opinion joined by O'Scanlan. It's essentially on fours with the case that we have here, both on the prejudice point as well as on the predicate ineffective assistance point. And what you see there is that the court concludes that there is a reasonable probability when you have an unconstitutional lineup that is introduced at trial improperly, that then the subsequent in-court identification, there is also a reasonable probability that that identification was tainted, and that's why in that decision the court found that there was prejudice and found that Petitioner had proved his Strickland claim for ineffective assistance. Do you want us to follow the Ninth Circuit? I think that in this instance, Judge Kaney, you should probably follow Judge Kaczynski and Judge O'Scanlan. It's a very well-reasoned decision that is on fours with this case and is also consistent with the various cases that we cite from this court at 52 to 57 of our opening brief. What's the proper way for this court to analyze the Wade analysis? Assume we find that there was a per se constitutional violation with no counsel at the live lineup. The court did not conduct a Wade analysis below because the court hadn't found that. On habeas review and looking at the prejudice standard, we determined whether or not the likelihood of a different result was substantial, not just conceivable. How does the Wade analysis fit into that framework? So, Judge St. Eve, I think that the way that the Wade analysis fits into that framework is you have the introduction of essentially an uncontested per se constitutional violation, and then you have the Wade analysis flowing from that. So it would be very difficult for this court to conclude anything but that a court that properly had a motion in front of it to exclude the testimony under Gilbert would not also have concluded that that same testimony tainted the in-court identification under Wade. I see that my time has expired. Thank you. May it please the Court, Assistant Solicitor General Amy Miller, on behalf of the responding party, Gary Bowden. The Wisconsin Court of Appeals correctly determined both that Milton failed to prove deficient performance and failed to prove prejudice. Now, with regard to prejudice, even assuming that the uncounseled line-up had been suppressed, there's no reasonable probability of a different result in this case, given the weight of the evidence that would have still been admissible against Milton. You've argued on the first prong that it's up to the petitioner to establish his non-waiver of counsel for the live line-up. Do you have any legal support for that? The governing case law in this area is Strickland. While Carnley and Brewer govern direct review of the admissibility of the evidence, this is an ineffective assistance of counsel case. Under Strickland, the defendant bears the burden of proving that his counsel had no reason to suspect in this case that a suppression motion would have been unsuccessful. Now, of course, if Milton had waived counsel or if he had been offered counsel and declined, a suppression motion would have been unsuccessful. Because this court must presume that counsel's performance was reasonable, it is up to Milton to rebut that presumption. Milton provided no evidence... I mean, just standing here today, though, can you think of any good reason in a case like this with eyewitness testimony or the identification testimony, I'm sorry, being as important as it was, why a lawyer would not object to this? Just standing there, can you think of one good reason? Well, of course, if Milton had waived his right to counsel at the lineup, his suppression motion would have been... The moment he invokes his right against self-incrimination in that interview, I really have a hard time understanding how you maintain the position that that right of counsel does not continue to attach to a critical stage lineup. Well, his right to counsel would have attached at the critical stage regardless of an earlier invocation. A lineup post-indictment is a critical stage at which the right to counsel automatically... But why doesn't the invocation of the Miranda protection, doesn't that signal no waiver? Well, Miranda Edwards does not apply to lineups, to any kind of non-interrogative proceedings. No, I know that, but the moment he says, I want counsel, doesn't that indicate he wants counsel for the entirety of his criminal proceeding unless he otherwise waives? That could be correct, although he could still waive. In fact, the day following, Milton again was interviewed by police and waived his Miranda rights the following day. So the fact that he waived his Miranda rights earlier tells us nothing about whether he waived his right at the lineup. And of course, under Montejo v. Louisiana, law enforcement was not prohibited from seeking a waiver at the lineup. And so if his counsel had some kind of indication of waiver, of course counsel would not have brought a suppression motion because... Is there any evidence in the record at all of waiver? Is there any evidence that law enforcement sought it or he said at the time of the lineup or right before that he was waiving? There's no evidence in the record whatsoever about what transpired between Milton and law enforcement in the moments leading up to the lineup. There is apparently a report of a police officer who prepared the lineup participants. That's mentioned in the report that Milton did include, but that report is not included in any of Milton's motions. So that report might contain some sort of information about what police officers said to Milton, if they ever informed him of his rights, if they ever asked if he wanted counsel and what he said in response. Milton alleged no facts of his own which were within his knowledge of what occurred between himself and law enforcement. There was no allegation by the defendant with regard to anything said prior to that lineup? And his post-conviction motion before the state courts, all that Milton alleged was that he was subject to an uncounseled post-indictment lineup. But not anything that was said prior by the officers involved? No, nothing at all. And so in the absence of that evidence, this court must presume that trial counsel acted reasonably under Strickland. And so because Milton has failed to meet his burden to prove unreasonable performance, the Wisconsin Court of Appeals correctly rejected his Strickland claim on the first prong. And at the very least, the Wisconsin Court of Appeals was not so unreasonable as to warrant relief under AEDPA. No Supreme Court case even addresses the issue of whether simply raising a rebuttable presumption in the defendant's favor is sufficient to overcome Strickland's presumption of reasonable performance. Because this is a novel issue on which reasonable jurists could disagree, relief is inappropriate under AEDPA. And so this alone is sufficient to deny Milton's hideous petition. If you concede that the live lineup was unconstitutional, you're saying everything that came after that overcame it. Yes, on the prejudice prong, even assuming that the lineup had been suppressed. There's no reasonable probability of a different result in this case. Now first, James Mayfield's identification from the photo array would still have been admissible. That identification came weeks before the lineup, where he identified Milton as one of the attackers with a gun. For similar reasons, Mayfield's in-court identification would also have been admissible, because it was clearly based on something other than the lineup. Under Wade, the question is, had the witness not attended the lineup, would they still have identified the defendant in court? Of course James Mayfield would have still identified Milton in court. He identified Milton long before the lineup. He identified him by name. He knew him from the neighborhood and was certain that he had seen Milton attacking the victim that night. Did the Wisconsin court make that determination in post-trial? The Wisconsin Court of Appeals did decide the Wade issue as to Mayfield. It did not decide the issue as to Howard. It assumed without deciding that Howard's identification in court would have been suppressed. But yes, with regard to James Mayfield, it decided that, of course, his in-court identification was independent of the lineup. Was that the trial court judge who made that determination in post-trial, or was that on the appeal, or both? That was both, I believe. And then Milton paints Mayfield as an incredible witness. But Mayfield was not as incredible as Milton claims. Much of Mayfield's testimony, and especially his testimony implicating Milton, was corroborated by physical evidence and by other witnesses. For example, Mayfield testified that two of the attackers had guns, which had been fired from the field near his home. Police found two sets of bullet casings in the field near Mayfield's home and nowhere else at the crime scene. Mayfield testified that Milton was one of the men with guns. Police found a bullet casing at Milton's home that matched one of the bullet casings from the field. Moreover, Kimberly Mayfield testified that the man in the white t-shirt had a gun. Milton's mother last saw Milton wearing a white t-shirt when he left their home near the crime scene just before the crime. The neighbor, Cedric Jones, also identified Milton to police as having been present during the crime. And finally, Robert Howard identified Milton in court as one of the attackers. Given all of this evidence implicating Milton, there's no reasonable likelihood that the jury would not have convicted him as a party to the crime of reckless homicide. And even assuming, as the Wisconsin Court of Appeals did, that Robert Howard's in-court identification would also have been suppressed, there is still no reasonable likelihood of a different result given all of the other evidence implicating Milton. Now at the very least, reasonable jurists could debate the likelihood of a different result in this case, which is sufficient to defeat Milton's claim under AEDPA. And so because the Wisconsin Court of Appeals correctly determined both deficient performance and prejudice, and at the very least, was not so unreasonable as to warrant relief under AEDPA, this Court should affirm the District Court's denial of Milton's habeas petition. If there are no further questions, the State rests. Thank you, Counsel. I'll give you 30 seconds. Thank you, Your Honor. I appreciate it. On waiver, what the State just presented to you is that they believe that the law requires my client to present evidence on an issue that was never at issue. That's not the law. It doesn't make sense. And it would invite litigants to present a host of straw men and then knock them down just to avoid having a waiver argument made against them on prejudice. When you come right down to it, this case is about two witnesses who unconstitutionally testified about the lineup. Those two witnesses were the State's case. They're the ones who made Mr. Milton a participant in the altercation. They're the ones who let the State claim he was party to the crime, and their testimony was prejudicial. We would urge that you reverse the District Court and that you grant habeas. Thank you. Thank you, Counsel. And unlike I had forgotten the other appointed Counsel, I appreciate your taking the case and your representation of your client in this case. Thank you, Your Honor. And that concludes the cases for today. The Court will be in recess.